UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| New York Marine and General Insurance Company, | No. 2:20-cv-00765-KJM-AC |
| Plaintiff, | ORDER |
| v. | |
| Mike Ness, et al., | |
| Defendants. | |

This case is an insurance coverage dispute between New York Marine & General Insurance Company and its insureds. The insureds, who are the defendants here, are also among the defendants in an underlying third-party action in California state court. They move to stay this case until the underlying case concludes, to avoid prejudice they may suffer if factual disputes common to both cases are litigated at the same time. The court submitted the motion without a hearing and **grants** it as explained below.

**I.    BACKGROUND**

Timothy Hildebrand says he was in the crowd at a punk rock concert when the band's lead singer, Mike Ness, denounced political conservatism and President Trump. *See* Second Am. Compl. ¶ 26, *Hildebrand v. Ness*, No. 34-2019-00260799 (Cal. Sup. Ct. Sacramento Cty., filed

Feb. 5, 2020).[1]  According to a complaint Hildebrand later filed in state court, he "calmly" told Ness he had not come to the concert to learn about the band's political theories. *Id.* ¶ 27.  Ness then "invited" Hildebrand to the stage, which Hildebrand understood as a request "to continue a verbal discourse." *Id.*  It was not.  Ness threw off his guitar, spat on Hildebrand, jumped down from the stage, and rained an "onslaught" of blows onto Hildebrand's face, head and body. *Id.*  A previous injury prevented Hildebrand from defending himself effectively, and he claims he suffered severe injuries at Ness's hands. *See id.* ¶ 29.  Security guards then forcefully expelled Hildebrand from the concert, Ness returned to the stage, and the concert continued. *See id.* ¶ 28.

Ness tells a very different story about the concert. *See* Mem. at 2–3, 7, ECF No. 15-1.  He claims Hildebrand flipped him off and muscled his way through the crowd toward the stage. *See id.* at 2.  Ness also moved toward Hildebrand, but Ness never wanted to fight; he wanted to argue. *See id.* at 3, 7.  The confrontation only became violent when Hildebrand threw a punch. *See id.* at 2.  Ness's description of the ensuing brawl is ambiguous.  He claims he was only defending himself but also that security guards intervened "before any punches landed." *See id.* at 3.  Whatever happened, Ness claims unambiguously that Hildebrand's injuries were inflicted at the hands of the security guards and the crowd, not by Ness. *See id.*

Hildebrand sued Ness, the band, the concert venue, two businesses affiliated with Ness ("Black Kat Customs" and "Crime Don't Pay, Inc."), and others for several intentional and negligent torts, among other claims. *See* Compl. at 7–24, ECF No. 18-2.  Ness and the two businesses tendered the defense to their insurer, New York Marine, who agreed to provide a defense under a reservation of rights. *See* First Am. Compl. ¶ 14, ECF No. 11.  New York Marine then filed this action.  It seeks a declaration that it has no duty to defend or indemnify Ness or the businesses. *See id.* at 1–2.

Ness and the two businesses, which the court refers to collectively as "Ness" without suggesting they are actually the same person or entity, move to stay this coverage litigation until

---

[1] The complaint was filed in this action at ECF No. 18-2.  The court takes judicial notice of the complaint, its filing, and its allegations but not their truth. *See Reyn's Pasta Bella, LLC v. Visa USA, Inc.*, 442 F.3d 741, 746 n.6 (9th Cir. 2006) ("We may take judicial notice of court filings and other matters of public record.").

2

Hildebrand's claims are resolved. *See* Mot., ECF No. 15; Mem., ECF No. 15-1. Ness argues the same factual disputes are at the heart of both cases, and he asks for a stay to avoid the prejudice he would suffer if forced to prove his version of the story against both Hildebrand and his insurer, who both have an incentive to establish Ness was the aggressor. *See* Mem. at 5–7. Ness also requests a stay to avoid the more general burden of litigating a two-front battle in state and federal courts. *See id.* at 8–9.

New York Marine opposes the motion. *See* Opp'n, ECF No. 18. It contends the insurance dispute can be resolved without wading into any factual morass, and it urges the court to consider the prejudice it would suffer if it has no duty to defend Ness but is forced to do so. The motion is fully briefed. *See* Reply, ECF No. 20; Minute Order, ECF No. 19.

## II.     LEGAL STANDARD

In a diversity case "governed by the substantive law of insurance of California," the court must "'ascertain from all the available data what the state law is and apply it.'" *Ins. Co. of State of Penn. v. Associated Int'l Ins. Co.*, 922 F.2d 516, 520 (9th Cir. 1990) (quoting *West v. Am. Tel. & Telegraph Co.*, 311 U.S. 223, 237 (1940)). Under California law, an insurer has a duty to defend its insureds against any third-party claim that "potentially seeks damages within the coverage of the policy." *Gray v. Zurich Ins. Co.*, 65 Cal. 2d 263, 275 (1966) (emphasis omitted). That duty continues until the insurer shows "the underlying claim cannot come within the policy coverage by virtue of the scope of the insuring clause or the breadth of an exclusion." *Montrose Chem. Corp. v. Superior Court*, 6 Cal. 4th 287, 301 (1993). If an insurer believes it has no duty to defend, it can accept the defense under a reservation of rights and file a separate action requesting a declaration that it has no duty to defend, as New York Marine has done here. *See Truck Ins. Exch. v. Superior Court*, 51 Cal. App. 4th 985, 994 (1996). The California Supreme Court has essentially advised insurers to follow that course. *See Montrose Chem. Corp.*, 6 Cal. 4th at 301 ("[T]he insurer is well advised to seek a judicial determination that it owes no defense.").

An insured might be prejudiced if its insurer files a declaratory judgment action while the third party's underlying action is still pending. *Great Am. Ins. Co. v. Superior Court*,

3

178 Cal. App. 4th 221, 235 (2009). "For example, when the third party seeks damages on account of the insured's negligence, and the insurer seeks to avoid providing a defense by arguing that its insured harmed the third party by intentional conduct, the potential that the insurer's proof will prejudice its insured in the underlying litigation is obvious." *Id.* (quoting *Montrose*, 6 Cal. 4th at 302). "Under those circumstances, the proper course of action is to stay the declaratory relief action until resolution of the underlying action." *Id.* "However, if the declaratory relief action can be resolved without prejudice to the insured in the underlying action—by means of undisputed facts, issues of law, or factual issues unrelated to the issues in the underlying action— the declaratory relief action need not be stayed." *Id.* In that situation, a stay is discretionary. *See id.* at 237.

These principles boil down to three questions: (1) What issues will be litigated in the insurer's declaratory relief action? (2) Are those issues related to any factual disputes that will be litigated in the underlying third-party action? If so, then a stay is mandatory. (3) If not, then the motion calls for a balancing exercise: does the "insured's interest in not fighting a two-front war" outweigh "the insurer's interest in not being required to continue paying defense costs which it may not owe and likely will not be able to recoup"? *Id.*

### III. DISCUSSION

The court's first task is to identify the issues the parties will litigate in this coverage action. New York Marine contests its duty to defend. "To prevail in an action seeking declaratory relief on the question of the duty to defend, '. . . the insured need only show that the underlying claim may fall within policy coverage; the insurer must prove it cannot.'" *Delgado v. Interinsurance Exch. of Auto. Club of S. Cal.*, 47 Cal. 4th 302, 308 (2009) (emphasis omitted) (quoting *Montrose*, 6 Cal. 4th at 300). The insured must first show the third party's claim is "within the basic scope of coverage" defined in the policy. *Id.* at 313 (quoting *Waller v. Truck Ins. Exch.*, 11 Cal. 4th 1, 16 (1995)). If a claim is covered, the insurer may yet prevail if it shows the policy excludes the claim. *See Waller*, 11 Cal. 4th at 16.

New York Marine's duty to defend thus turns on the interpretation of the insuring agreement and the exclusions in its policies. The terms of those provisions are undisputed. The

4

insureds are Crime Don't Pay, Black Kat, and Ness "with respect to the conduct of a business of which [he] is the sole owner." Westfall Decl. Ex. C at 14, 115, ECF No. 18-1. New York Marine agreed to "defend [any] insured against any 'suit' seeking damages for 'bodily injury or 'property damage,'" if "[t]he 'bodily injury or 'property damage' is caused by an 'occurrence.'" *Id.* at 107. "Occurrence" is defined as "an accident." *Id.* at 120. The policy excludes from coverage any "'bodily injury' or 'property damage' expected or intended from the standpoint of the insured," but that exclusion "does not apply to 'bodily injury' resulting from the use of reasonable force to protect persons or property." *Id.* at 108.

New York Marine makes three basic arguments against coverage on the basis of these provisions. First, it argues there was no "occurrence" because there was no "accident." FAC ¶ 17(a). As New York Marine sees it, Hildebrand is charging Ness with intentional wrongdoing, not accidental harm. *See id.* Second, New York Marine argues the claims are excluded from coverage because Ness intended to injure Hildebrand and was not reasonably defending himself or others. *Id.* ¶ 17(b). Third, it argues the claims are not covered because Ness was not acting on behalf of the two businesses or conducting their business when he allegedly attacked Hildebrand. *See id.* ¶ 17(c).

Each of these arguments raises factual questions. Whether Hildebrand's claims arose from an "accident" depends on whether Ness intended to strike Hildebrand or struck him accidentally, for example while defending himself or in an attempt to keep Hildebrand away from the crowd. The same questions would arise in litigating the effect of the exclusion for intentional harms. The viability of New York Marine's claims depends on whether Ness was conducting business for Black Kat and Crime Don't Pay, acting on their behalf, or whether he can be distinguished from them at all, again, all factual questions.

As for the second question described above, the same factual disputes are at the center of Hildebrand's lawsuit against Ness. To prevail on his battery claim, for example, Hildebrand would need to prove, among other things, that Ness "intentionally performed an act that resulted in a harmful or offensive contact" with Hildebrand. *Brown v. Ransweiler*, 171 Cal. App. 4th 516, 526 (2009). The two businesses' liability depends at least in part on whether Ness was acting

1  within the scope of his employment or agency, if any, and whether the businesses are his alter
2  egos. *See, e.g.*, *Secci v. United Independent Taxi Drivers, Inc.*, 8 Cal. App. 5th 846, 855 (2017)
3  ("A corporation may be held vicariously liable as a principal for the torts of its agents."); *Mary M.*
4  *v. City of Los Angeles*, 54 Cal. 3d 202, 208 (1991) ("Under the doctrine of respondeat superior, an
5  employer may be held vicariously liable for torts committed by an employee within the scope of
6  employment."); *Mesler v. Bragg Mgmt. Co.*, 39 Cal. 3d 290, 300 (1985) (describing what must be
7  shown before corporate form is disregarded). Because the same factual disputes are at the
8  foundation of both the state court litigation and the federal coverage action, a stay is mandatory.

9  New York Marine believes its coverage claims can be litigated without resolving any
10 factual disputes, but that belief depends on an incorrect reading of the California Supreme Court's
11 decision in *Delgado v. Interinsurance Exchange of the Automobile Club of Southern California*,
12 47 Cal. 4th 302. In *Delgado*, the insured homeowner had hit and kicked a seventeen-year-old
13 boy. *See id.* at 306. The boy sued and asserted an intentional tort claim and a negligence claim.
14 *Id.* The insurer refused to defend because it concluded there had been no "occurrence" under the
15 terms of the policy, which, as does the policy here, defined "occurrence" as an "accident." *Id.*
16 The boy then settled his claims with the homeowner, and they stipulated that the homeowner had
17 hit and kicked the boy under an unreasonable belief that it was necessary for self-defense. *Id.*
18 The claim against the insurer was then assigned to the boy, who sued the insurer for wrongfully
19 denying coverage and bad faith. *See id.* at 306–07. The case eventually arrived in the California
20 Supreme Court, which agreed with the insurer that there had been no accident and therefore there
21 was no possibility of coverage. The homeowner had intended to do what he did. *See id.* at 305.

22 New York Marine argues it can rely on the same theory as the insurer in *Delgado*.
23 *See* Opp'n at 9–10. New York Marine's policy, like the policy in *Delgado*, covers only
24 "accidents," and Ness, like the homeowner in *Delgado*, says he was only defending himself. But
25 the analogy to *Delgado* is not so simple. The court's holding was quite narrow. It rejected two
26 arguments. First, it disagreed that "accident" is defined from the perspective of the victim.
27 *See* 47 Cal. 4th at 308–11. That is, an intentional assault is not transformed into an "accident"
28 simply because the victim did not expect or intend to be assaulted. *See id.* at 310. The insured's

1 intent is what matters. *See id.* Second, in *Delgado*, the court rejected the argument that an
2 unreasonable belief in the need for self-defense can transform intentional conduct into
3 unintentional conduct. *See id.* at 311–17. An intentional blow is intentional even if thrown under
4 a mistaken belief that it was necessary for self-defense. *See id.* As a result, because there was no
5 allegation that the homeowner had accidentally punched or kicked the boy—only that the
6 homeowner was mistaken about the need to defend himself—the assault was not accidental, so
7 there was no possibility of coverage. *See id.* at 317. Here, by contrast, it is unclear both whether
8 any self-defense was necessary and whether Ness struck Hildebrand intentionally, if at all. As a
9 result, neither of the court's holdings in *Delgado* could dispose of this case as a matter of law.

10 New York Marine's efforts to draw distinctions between coverage and exclusionary
11 clauses are futile for the same reason. *See* Opp'n at 10–11. That distinction was decisive in
12 *Delgado* because it showed why the court's previous decision in *Gray v. Zurich Insurance Co.*
13 was not controlling. *See Delgado*, 47 Cal. 4th at 312–14 (citing *Gray*, 65 Cal. 2d 263). The state
14 supreme court held in *Gray* that an unreasonable belief in the need for self-defense can "remove
15 the resulting act from the reach of the policy's exclusion clause for intentional acts" because
16 exclusions are interpreted narrowly against an insurer and because the insurer bears the burden to
17 show an exclusion eliminates any possibility of coverage. *See id.* at 314 (citing *Gray*, 65 Cal. 2d
18 at 277). In *Delgado*, by contrast, the court was interpreting a coverage clause. When courts
19 interpret a coverage clause, they do not "indulge in a forced construction" of that clause "to bring
20 a claim within the policy's coverage." *Id.* at 306 (quoting *Waller*, 11 Cal. 4th at 16). The
21 coverage-versus-exclusion distinction is irrelevant here. Coverage for Hildebrand's claims is a
22 possibility under the terms of both the coverage clause and the exclusion for intentional acts;
23 again, it is unclear whether Ness acted intentionally when he made contact with Hildebrand, if he
24 made contact at all.

25 The flaws in New York Marine's reasoning are partially the product of its incorrect
26 assumption that coverage is a function of Hildebrand's allegations and nothing more. *See* Opp'n
27 at 5, 8–9 (emphasizing Hildebrand's allegations of intentional wrongdoing). Although an
28 insurer's duty to defend is "usually made in the first instance by comparing the allegations of the

1  complaint with the terms of the policy," the inquiry does not end with the third party's

2  allegations.  *See Montrose*, 6 Cal. 4th at 295 (quoting *Horace Mann Ins. Co. v. Barbara B.*,

3  4 Cal. 4th 1076, 1081 (1993)).  "[W]hen facts extrinsic to the complaint, gathered from the

4  insured or other sources, suggest that the claim may be covered under its policy, the insurer is

5  held to a duty to defend the action."  *Horace Mann*, 4 Cal. 4th at 1082.  Here, New York Marine

6  has ignored Ness's first-hand account of the alleged assault in concluding the attack was

7  intentional and not covered.  According to Ness, if there was a blow, it was unintentional.

8      In sum, a stay is mandatory because the same factual disputes will likely be litigated in

9  this case and in Hildebrand's underlying lawsuit.  The court need not consider whether a

10 discretionary stay would be appropriate.

11 **IV.   CONCLUSION**

12     The motion to stay is **granted**.  This action is **stayed** pending resolution of *Hildebrand v.*

13 *Ness*, No. 34-2019-00260799-CU-PO-GDS (Cal. Sup. Ct. Sacramento Cty., filed July 18, 2019).

14 New York Marine is **directed to file a notice within fourteen days** of any judgment entered in

15 that action.  Other dates and deadlines are **vacated**.

16     This order resolves ECF No. 15.

17     IT IS SO ORDERED.

18 DATED: January 11, 2021.

CHIEF UNITED STATES DISTRICT JUDGE